## GUY *v.* WASHBURN.

23   111
146   720

WHERE taxes have been illegally assessed, and the tax collector is about to sell the property for the taxes thus assessed, the tax can be paid under protest and the money recovered back by action.

The presumption of law is that a Board of Equalization perform their duty and correct any inequality in the assessment of taxes.

It is not sufficient in a pleading to state in general terms that a valuation of property is "unjust, disproportioned, and unequal," without stating clearly and distinctly wherein the alleged valuation is "unjust, disproportioned, and unequal."

APPEAL from the Twelfth District Court, City and County of San Francisco.

This was an action brought to recover back the sum of eleven thousand and thirty dollars and two cents, and interest from the date of payment, which sum was paid by the plaintiff to the defendant, the tax collector of the City and County of San Francisco, under protest. The remainder of the facts are stated in the opinion of the Court.

*Whitcomb, Pringle & Felton,* for Appellants.

*Currey* and *Mastick,* for Respondents.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

Guy *v.* Washburn.

This is an action to recover from the defendant, the Tax Collector of San Francisco, a certain sum of money paid him by the plaintiff for taxes, under protest, on the ground that the proceedings of the public officers respecting the tax list were irregular and void. The case was tried by the Court, who found for the defendant, and the plaintiff appeals.

The pleadings in this case are under oath. The complaint is made up almost entirely of averments of matters of evidence merely, and it is difficult to find an issuable fact properly stated in it. The answer follows the complaint, and the findings are subject to the same objection. But as no motion was made to strike out the objectionable averments, this Court can take no action upon it. This state of the pleadings and findings, however, renders it difficult to properly investigate the question presented for adjudication. The necessary averments in a case of this kind are few and simple, and there can be no excuse for stuffing the complaint with matters of evidence instead of the issuable facts. As an attempt to convert the complaint into a bill of discovery, it directly violates the spirit and letter of the four hundred and seventeenth section of the Practice Act. (*Bowen* v. *Aubrey*, 22 Cal. 556) If, in a desire to get all the matters of evidence in the complaint, the plaintiff has neglected to state the necessary issuable facts, the Court cannot insert them for him. A pleading is always to be construed most strongly against the party pleading.

It appears that on the twenty-third of November, 1860, the plaintiff was the owner of a large amount of valuable real estate in the City of San Francisco liable to taxation; that this property was assessed to him, in his name (with the exception of a few lots only) by the Assessor of the City and County of San Francisco; that after this assessment had been made, and before the Board of Equalization had closed their labors upon it, certain irregular proceedings were had relating to the exhibition of the assessment roll for public inspection and its equalization, which the plaintiff claims rendered the levy of taxes on his property void, and released him from all legal liability to pay the same; that the Tax Collector, being about to sell his property for the taxes thus assessed and levied, the plaintiff came forward and paid his taxes to the Collector

under protest, and he now brings this action to recover the money back.

It is objected by the respondent that as the property thus threatened to be sold was real estate, the payment, though under protest, was in law voluntary, and no action can be maintained to recover it back as it could if it had been a threatened sale of personal property. The right of a party who has paid money not justly due to a Tax Collector, under protest, to recover it back by action, has been sustained by this Court in cases of both real and personal property. (*Hayes* v. *Hogan*, 5 Cal. 243 ; *Falkner* v. *Hunt*, 16 Id. 167.) We are not disposed to disturb those decisions upon this point, and this objection is therefore overruled.

It is also objected that this action was not commenced until more than twenty days after the time fixed by law for the payment by the Tax Collector of the taxes collected by him to the County Treasurer; that the presumption of law is that the officer has done his duty and has so paid over the money; and therefore the action should have been against the County Treasurer and not the Tax Collector. It is unnecessary to determine this point, as it is not properly before us. The objection should have been taken by demurrer or answer. If the answer had stated that the defendant had, before the suit, paid the money received from the plaintiff to the County Treasurer, then the question could have been properly raised in this Court. But it is too late to raise it here for the first time.

The principal ground of the plaintiff's complaint is that the public officers did not keep the assessment roll open for public inspection, as required by the Revenue Law of 1857, under which the assessment was made, and their conduct towards himself and his agent, in their attempts to inspect the roll, is set forth with great minuteness and particularity. It appears, however, that several days before the adjournment of the Board of Equalization, and after he had asked the board for an inspection as a legal right, he was notified that he could personally inspect the roll; but neither he or his agent attended for that purpose, or after that applied for an inspection. It appears, further, that about the time of this notice, or shortly after, the plaintiff was compelled to leave the city for

several weeks on account of ill-health. If the plaintiff, in consequence of the neglect or refusal of the public officers to perform their duty, had been entirely debarred or prevented from exercising his right to inspect the assessment roll, a question would have arisen as to whether such neglect or refusal would have vitiated his assessment and released him from all liability to pay the same, in the absence of all averment or proof that the valuation of his property by the Assessor had been excessive, or higher in proportion than the valuation of the other property in the city, or that he had suffered any actual damage thereby. That question is not, however, before us ; for the fact appears that the plaintiff had a fair opportunity to inspect the tax list, either in person or by his agent, as he might choose, before the Board of Equalization had closed their labors, and thus he could have pointed out any inequality which might have existed in the valuation of his property, and could have applied to the board to have the same corrected. This fact is a sufficient answer to all the objections of the plaintiff, founded upon his inability to procure an inspection of the roll previous to that time.

The fact that he was rendered unable to make such personal inspection, by ill-health, is no answer or excuse. His ill-health was his misfortune ; but that misfortune could not in any way invalidate his assessment for taxes, or sustain a charge that such assessment had never been equalized. If it could produce such a result, then every person would be relieved from paying his taxes by proving that during all the time fixed by law he had been unable, on account of sickness or any other misfortune, to personally inspect the assessment roll.

It appears further, that the Board of Equalization met at the time required by law, and acted upon and duly equalized the assessment roll, and the presumption is that the plaintiff's property was duly equalized with the rest. The plaintiff avers in his complaint, however, " that the valuation of his property above-described, as made by the Assessor, is grossly unjust, disproportioned, and unequal," but it is nowhere averred that this inequality was not corrected by the Board of Equalization, and in the absence of such averment the presumption that the board did their duty and duly

equalized it, must prevail. One of the most important averments in a case of this kind is, that the plaintiff has suffered actual damage by the acts and proceedings of the public officers complained of, and the above averment is the only one in the complaint upon that point. It is clearly insufficient as an averment of damage, or as a foundation for a charge of actual injury.

It is not sufficient in a pleading to state in general terms that a valuation of property is " unjust, disproportioned, and unequal," without stating clearly and distinctly wherein the alleged valuation is " unjust, disproportioned, and unequal." For aught that appears, this alleged disproportion and inequality may have consisted in valuing the plaintiff's property *lower* in proportion than other property in the city ; in which case he would have no just cause of complaint, as it would appear that he had suffered no injury thereby. In such a case, the plaintiff could hardly expect a Court to declare the assessment roll void, or compel the Collector to repay his taxes. He should have averred, and proved if denied, that the valuation of his property was greater than it should have been to make it proportioned with the other property assessed. In the absence of such an averment, the complaint is defective, and the Court cannot cure that defect for the party.

In the case of *Cowell* v. *Doub* (12 Cal. 273) this Court, in examining a question relating to the necessity of a tax list being passed upon by the Board of Equalization, say : " It is no objection that the same act provides for a correction of this list by the Board of Equalization. The case does not show that there was error to be corrected, so far as the appellant's property is concerned. It is not material whether the notice provided to be given in the fifth section of this act was given regularly or not. The notice was only important as affording an opportunity for correcting errors in the value of the property taxed. But, as said before, the record does not show that there was any error in the value of the property taxed, to the prejudice of the appellant." So in the present case, " the record does not show that there was any error in the value of the property taxed, to the prejudice of the appellant," and it is therefore fully within the rule laid down in the above case.

In the case of *The People* v. *Seymour* (16 Cal. 332) this Court examined at some length several questions relating to the subject of taxes. Among other things, it was held that a tax upon property was as well a personal charge as a charge upon the property; that the Legislature can as well make a man pay his taxes when, from accident or oversight, or his own remissness, the time for payment has passed, or the mere mode of charging him has not been followed, as they could in the first instance direct the tax; that the tax is not less a tax, nor a tax due from him, because of the circumstances from which he claims exemption; and it was held that if the assessment be necessary to create the obligation to pay the taxes, it was only necessary that the assessment should be made substantially in pursuance of the law.

The plaintiff in his complaint avers that at the date fixed by the law, to wit: the first Monday in August, 1860, the Assessor delivered to the Clerk of the Board of Supervisors the tax list or assessment roll, but avers that the same was incomplete, as it had no alphabetical or other index connected therewith; and it is contended that this is sufficient to vitiate the assessment and release the plaintiff from all liability to pay his taxes. (Amendments of 1859, Sec. 3.)     Statutes of 1859, 346, among other things, provides that " it shall be the duty of the Assessor to prepare a tax list or assessment roll of real estate, with an alphabetical index connected therewith." "*Provided*, that in the City and County of San Francisco the form of the tax list or assessment roll shall be such as may be directed by the Board of Supervisors." Whether the Board of Supervisors directed that the list of tax payers should be alphabetically arranged, instead of having this " alphabetical index," does not appear. But it is Sec. 7 of the Revenue Law of 1857 (Stat. of 1857, 390) which regulates this matter, and that provides that the Assessor shall, on or before the first Monday in August, deliver the tax list, and the map, books, etc., to the Clerk of the Board of Supervisors. There is nothing in the law of 1859 which requires that this " alphabetical index " should be completed by the first Monday in August; and even if it did, a failure to complete it within that time would not have the effect of vitiating the assessment roll. (*Hart* v. *Plum*, 14 Cal. 148; *Cowell* v.

*Doub*, 12 Id. 273.)   This is the only averment in the complaint of any defect or omission affecting the validity of the assessment, and the assessment constitutes the basis of the claim for taxes—and on that the liability of the plaintiff to pay the taxes mainly rests.   The assessment being valid, and that assessment having been duly acted upon by the Board of Equalization, as required by law, the legal liability of the plaintiff to pay the taxes was fixed—and in the payment he made to the Tax Collector he did but discharge a legal liability; and he has, therefore, no valid ground to recover back the same.

The judgment is affirmed.